IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CLIFFS PLANTATION TIMBER FARM, LLC                                    PLAINTIFF

VERSUS                                      CIVIL ACTION NO. 5:05cv197-DCB-JMR

UNITED STATES OF AMERICA                                             DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the government's Motion to Dismiss [**docket entry no. 3**]. Having reviewed the Motion, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

### FACTS

This action concerns a boundary dispute between certain adjacent properties located in Adams County, Mississippi. The plaintiff, Cliffs Plantation Timber Farm, LLC ("Cliffs Plantation"), owner of one adjacent tract of land, contends that the United States government (the "government"), owner of the other adjacent tract at issue in this case, has violated its property rights. Specifically, the dispute concerns the proper demarcation of "the boundary line between Cliffs' Section 30, Township 6 North, Range 3 West, and the United States' Section 37, Township 6 North, Range 3 West." Pl. Response to Motion to Dismiss, at 1. The plaintiff alleges that the government has caused boundary line marks to be removed and destroyed along that line, and further claims that the government has encroached upon sixteen acres belonging to Cliffs Plantation and caused various items of the

plaintiff's personal property, such as line markings and boundary posts, to be removed from the plaintiff's lands.  See Compl., ¶7. In response, the government contends that it acquired all rights to the disputed area via a 1991 conveyance from the prior landowner.

On October 28, 2005, Cliffs Plantation initiated the current suit pursuant to the Quiet Title Act, 28 U.S.C. § 2409a, which allows for resolution of real property disputes against the United States government.  See Block v. North Dakota, 461 U.S. 273, 286 (1983).  In its complaint, the plaintiff seeks a preliminary injunction against the government, enjoining its agents from trespassing upon the plaintiff's lands.  Cliffs Plantation also asks the Court to enjoin the defendant to "restore all of the destroyed line markings, posts and pins and restor[e] to Plaintiff all of the personal property removed by Defendant's agents and servants."  Compl., ¶13.  Cliffs Plantation requests an award of compensatory damages against the government for its "willful, intentional and blatant trespass and encroachment[.]" Compl., at 7. The plaintiff further claims that it is entitled to have title to the land in question "confirmed against Defendant and against all the world."  Compl., ¶14.  Lastly, Cliffs Plantation demands that it be awarded its attorney's fees and costs in this action.

## DISCUSSION

The government moves to dismiss the plaintiff's complaint for failure to state a claim for which relief can be granted

pursuant to Fed. R. Civ. Proc. 12(b)(6) and for failure to name an indispensable party pursuant to Fed. R. Civ. Proc. 12(b)(7). Specifically, the government raises five separate reasons to have the Court dismiss Cliffs Plantation's complaint:

> (1) All claims are time-barred;
> (2) Plaintiff's claims for a preliminary injunction are barred;
> (3) Plaintiff's claims for ejection and permanent injunction are barred;
> (4) Plaintiff has failed to join an indispensable party, an adjacent landowner;
> (5) Plaintiff's damage claims are not authorized under the Quiet Title Act.

Each proposed basis for dismissal will be examined in turn.

**(1) Plaintiff's claims are time-barred under the Quiet Title Act**

As its first enumerated basis for dismissal, the government contends that the plaintiff's claim is time-barred under the Quiet Title Act. That Act provides that "[a]ny civil action under this section . . . shall be barred unless it is commenced within twelve years of the date upon which it accrued." 28 U.S.C. § 2409a(g). The action is deemed to have accrued "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." Id. The government submits that because it acquired the property in question in 1991, more than twelve years before the commencement of this action in 2005, Cliffs Plantation's claims are barred by the statute of limitations.[1]

---

[1] The government states that the present action is barred by the Quiet Title Act's "twelve-year statute of repose[.]" See Motion

The twelve-year limitations period begins when the plaintiff or his predecessor knew or should have know of the government's adverse land claim.  "This standard does not require the government to provide explicit notice of its claim, nor is knowledge of the full contours of the government's claim required -- all that is necessary is a reasonable awareness that the government claims some interest adverse to the plaintiff's."  Watts v. United States, 2002 WL 87056, at *3 (D. Neb. Jan. 23, 2002) (citing Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 737 (8th Cir. 2001)).  "Simply put, the limitations period is triggered when a landowner has reason to

---

to Dismiss, at 1.  The time bar imposed by the Act, however, is better described as a statute of limitations, not a statute of repose.  See Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co., 419 F.3d 355, 362 (5th Cir. 2005) ("[D]ifferences between statutes of limitations and statutes of repose are substantive, not merely semantic").  The distinction is recognized by the Fifth Circuit in Poole Chemical:

> A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time.  It cuts off the remedy . . . .  A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant.  It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued.

Id. at 363.  By the plain reading of the statute, the time limit for bringing a Quiet Title Act claim does not begin to run until the injury, i.e., the government's claim to the land, is or should have been discovered.  Because a plaintiff's cause of action is only extinguished after a period of time measured from the date his or her injury occurred (or from the date that the injury should have been recognized), the defense asserted by the government is better described as one falling under the Quiet Title Act's statute of limitations.  See id. ("[A]wareness of injury is not a factor in determining when the time period of a statute of repose starts to run").

know that the government claims some type of adverse interest in that land." Id.

In Tadlock v. United States, 774 F. Supp. 1035 (S.D. Miss. 1990), United States District Judge Henry T. Wingate held that a landowner has constructive notice of an adverse land interest when a recorded deed indicates the United States government's claim to the property may be adverse to the litigant.  See id. at 1043 ("recording of a deed constituted notice to the world that United States claimed ownership to the property") (internal citations and quotations omitted).  The "relevant inquiry for purposes of this motion is not whether the deed in fact conveyed title to the United States, but whether the recording of the deed conveyed sufficient notice of the government's claim to the disputed tracts." Watts, 2002 WL 87056, at *3 (emphasis added) (citing United States v. Mottaz, 476 U.S. 834, 843-44 (1986) (identifying crucial showing as "knowledge that the government did not recognize [the plaintiff's] title")).

There is no dispute that the United States has a claim, recorded by deed in 1991, to a tract of land located adjacent to the plaintiff's property.  Thus, under Tadlock and Watts, if the deed held by the government discloses the boundary in a manner contrary to Cliffs Plantation's claimed boundary, then the plaintiff had constructive notice of the government's adverse land claim in 1991 when that instrument was recorded.  If such is the

case, then this action would be time-barred.

The 1991 deed conveying title to the United States describes the disputed boundary line by reference to an August 1964 map created by Jordan Kaiser and Sessions. See Motion to Dismiss, at 2; Pl. Response to Motion to Dismiss, ¶7. Specifically, the deed describes the bounds of the disputed area as follows:

> S 81° 45' E 1080 feet along the southerly line of Section 34, thence;
>
> S 47° 15' E 2349.6 feet along the southerly line of Section 34 to a 1/2" Iron Pipe depicted in a Map of Boundary Between the Armstrong and John Ellis Tracts, by Jordan, Kaiser and Sessions, Civil Engineers, Natchez, Mississippi, dated August 1964, as marking the corner common to Sections 37, 36, 34, 23, and 30, thence;
>
> S 84° 00' E 1861.5 feet along the northerly line of Section 37 to a 1/4" Iron Rod depicted on the above mentioned map as the northeast corner of Section 37, thence;

Warranty Deed dated Feb. 21, 1991, at 406. The 1964 map referenced by the deed clearly shows the boundary point marked as the "corner common to Sections 37, 36, 34, 23, and 30[.]" See Jordan, Kaiser and Sessions Map dated Aug. 1964 (attached as Ex. "A" to this Order). This corner is described in a 2004 survey conducted by Virgil Collins as "Broken Magnolia Corner" or, alternatively, as "Bay Corner." See Collins Survey Map Excerpt (attached as Ex. "B" to this Order). Cliffs Plantation asserts that Broken Magnolia Corner, as represented by the 1991 deed conferring the land to the government, sets forth the proper boundary point for the

northeasterly corner of the government's lands in Section 37.

In 1995, the government placed an aluminum pin presumably where it believes the northeasterly corner of Section 37 should be. See Photos of Aluminum Pin (attached as Exs. 2 & 3 to Pl. Response to Motion to Dismiss). That pin, as represented by the attached Collins survey, is not placed on a "corner common to Sections 37, 36, 34, 23, and 30[.]" Instead, it was set nearly 480 feet north of Broken Magnolia Corner. This discrepancy on the Collins' survey is pointed out by the plaintiff in its response to the government's motion to dismiss. In its rebuttal, the government argues that the plaintiff's reliance upon the Collins' survey, which was conducted in 2004, is misplaced because the proper focus should be solely upon the 1991 deed. See Def. Rebuttal, at 4. However, the government does not contest that the aluminum pin is correctly marked on the Collins' survey, nor does it argue that the pin is not set at a point some 480 feet north of the point represented as the northeasterly border of Section 37 in the 1991 deed.

As stated earlier, in order for the recordation of the deed to serve as constructive notice of the government's adverse land claims, the deed must disclose the boundary in such a way that the plaintiff should have been aware of the adverse claim. There exists at least one apparent discrepancy between the representation of the lands conveyed to the government in the 1991 deed and the representation of the lands the government claims it owns in this

-7-

suit. While this variance may yet be explained by the government, the Court finds that there is sufficient discrepancy between the description of the conveyance in the 1991 deed and the lands currently subject to dispute so that Cliffs Plantation did not have constructive knowledge of the government's claim in 1991 when the deed was recorded.

There is also no evidence supporting the contention that the plaintiff should have known of the government's adverse claim through means other than by constructive notice from the recordation of the deed. The United States pleads that it has maintained and enforced the disputed lines since 1991; however, that assertion is not supported by any evidence. The plaintiff states that it had knowledge of the adverse claim on its lands only as early as 1995 when it discovered the aluminum pin set by the government's agents. See Affidavit of Steve Allen, one of the owners of Cliffs Plantation (attached as Ex. 6 to Pl. Response to Motion to Dismiss). Because that knowledge was obtained less than twelve years before the current suit was initiated, the plaintiff's claim is not time-barred by the Quiet Title Act's limitation period.

**(2) Plaintiff's claims for preliminary injunction are barred**

The plaintiff seeks a preliminary injunction against the government to prevent it from further trespass and encroachment upon lands allegedly owned by Cliffs Plantation. According to the

Quiet Title Act, however, "[n]o preliminary injunction shall issue in any action brought under this section."  28 U.S.C. § 2409a(c). Therefore, that claim will be dismissed.

**(3) Plaintiff's claims for ejection and/or permanent injunctive relief are barred**

The plaintiff also requests relief in the form of an order of ejection against the United States and asks for the Court to grant a permanent injunction prohibiting the government from future trespass on the disputed land.  The Quiet Title Act states that:

> The United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom and sixty days; and if the final determination shall be adverse to the United States, the United States nevertheless may retain such possession or control of the real property or of any part thereof as it may elect, upon payment to the person determined to be entitled thereto of an amount which upon such election the district court in the same action shall determine to be just compensation for such possession or control.

28 U.S.C. § 2409a(b).  Therefore, even if the plaintiff ultimately prevails in this action, the government will retain the option to pay just compensation to the plaintiff and keep possession of the property.  The government contends that the plaintiff, therefore, "cannot obtain a permanent injunction ejecting the United States from the property or barring the United States from possessing the property."  Motion to Dismiss, at 5.  However, from the plain language of the statute, nothing prevents such an injunction from

issuing <u>if</u> the plaintiff prevails and <u>if</u> the government elects not to pay just compensation for the property once sixty days have lapsed from the entry of a final judgment and any appeal therefrom. Under that caveat, the Court declines to dismiss the plaintiff's claim for a permanent injunction.

**(4) Plaintiff has failed to join an indispensable party**

The government contends that the plaintiff has "failed to join adjacent landowners who are indispensable parties under Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure." Motion to Dismiss, at 5. Specifically, the government argues that the "boundary line which plaintiff seeks to change carries beyond the real property of the United States to the east, and if plaintiff is successful, would result in a loss of real property by adjacent landowners." <u>Id.</u> It is contended by the government that the plaintiff should either be required to join these adjacent landowners or have its claims against the government dismissed.

From the maps of the disputed area presented to the Court, it appears that Cliffs Plantation's action concerns only a portion of land claimed by the government to extend northward into Section 30. Thus, if the plaintiff is successful, it appears, at least at this juncture, that the only affected area would be a tract of sixteen acres lying solely between the government's and the plaintiff's lands. Therefore, no adjacent landowners would be impacted by the proposed resolution of this suit. The government's claim that this

action should be dismissed because indispensable parties have not been join will be denied. However, it is not entirely clear where the disputed border actually lies. The Court will carefully monitor the parties' allegations as they are fleshed out and will make appropriate orders in the future to insure that any adjacent landowner whose property may be altered by the outcome of this case will have the opportunity to have his, her or its interests properly represented.

**(5) Plaintiff's claims for compensatory damages are not authorized under the Quiet Title Act**

The defendant states that the plaintiff's request for compensatory damages must be dismissed because there is no authority for such an award under the Quiet Title Act. See Motion to Dismiss, at 5. Cliffs Plantation offers no substantive response to this contention. Congress waived the United State's sovereign immunity regarding actions seeking to quiet title to certain federally claimed lands in the Quiet Title Act. "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." United States v. Mottaz, 476 U.S. 834, 841 (1986). The Quiet Title Act includes no provision allowing for compensatory damages to be awarded to a successful litigant. Therefore, inasmuch as the Court lacks any power to order such a remedy against the government in this action, the plaintiff's claim for compensatory damages will likely be dismissed. However, the plaintiff is given an

-11-

opportunity to present at trial any legal authority which supports its claim.

## CONCLUSION

Based on the reasoning and authority set forth above, the Court finds that the government's Motion to Dismiss should be granted in part and denied in part. Accordingly,

IT IS HEREBY ORDERED that the government's Motion to Dismiss [**docket entry no. 3**] is **GRANTED** as to the plaintiff's claims for a preliminary injunction and for compensatory damages under the Quiet Title Act but is **DENIED** as to all other claims;

IT IS FURTHER ORDERED that the plaintiff will have an opportunity at trial to present legal authority which supports a claim for compensatory damages outside of the Quiet Title Act;

SO ORDERED, this the 5th day of May, 2006.

S/DAVID BRAMLETTE<br>
UNITED STATES DISTRICT JUDGE